# IN THE UNITED STATES DISTRICT COURT
# FOR THE MIDDLE DISTRICT OF TENNESSEE
# NASHVILLE DIVISION

| | |
|---|---|
| Timothy Wayne Grimes, | ) |
| | ) |
|     Plaintiff, | ) |
| | )    No. 3:10-0461 |
| v. | ) |
| | )    Judge Haynes/Bryant |
| Dickson County, et al., | ) |
| | ) |
|     Defendants. | ) |

**TO:**    The Honorable William J. Haynes, Jr.

## REPORT AND RECOMMENDATION

Defendant James William Jackson, M.D.,[1] has filed his Motion for Summary Judgment pursuant to Rule 56 of the Federal Rules of Civil Procedure. (Docket Entry No. 46.) The undersigned Magistrate Judge entered an order directing Plaintiff, Timothy Wayne Grimes, to show cause on or before April 8, 2011, why Defendant Jackson's motion for summary judgment should not be granted. (Docket Entry No. 50.) Because the deadline has passed and Plaintiff has not responded to the order, Defendant's motion for summary judgment is ripe for resolution. This motion has been referred to the undersigned Magistrate Judge for a report and recommendation. (Docket Entry No. 13.)

For the reasons stated below, the undersigned Magistrate Judge recommends that Defendant's motion for summary judgment be granted.

---

[1] On June 20, 2011, counsel for Defendant Jackson filed a suggestion of his death upon the record, including a copy of the death certificate indicating that Defendant Jackson died on May 4, 2011. (Docket Entry No. 71.)

1

## Statement of the Case

The pro se Plaintiff, proceeding in forma pauperis, filed this action against multiple defendants, including Defendant Jackson, for violation of civil rights under 42 U.S.C. § 1983. Specifically, it appears from the complaint that Plaintiff alleges a violation of the Eighth Amendment by Defendant Jackson's deliberate indifference to his medical needs. (Docket Entry No. 1, Compl. at 5-6.) In addition, it appears that Plaintiff alleges a state law claim for medical malpractice against Defendant Jackson. (Docket Entry No. 1, Compl. at 5.) Plaintiff contends that Defendant Jackson wrongfully ordered multiple officers at the Dickson County Jail to place Plaintiff on suicide watch, to force Plaintiff to wear protective clothing, and to make Plaintiff speak with a Mobile Crisis Center counselor because he refused to take his medication for hypertension. (Docket Entry No. 1, Compl. at 8.)

Defendant Jackson contends that he is entitled to summary judgment on Plaintiff's Eighth Amendment deliberate indifference claim and state law medical malpractice claim because he has qualified immunity as a private contractor with Dickson County to provide medical care to inmates. (Docket Entry No. 49, Mem. Supp. Mot. at 4.) Defendant Jackson further contends that, even if he is not entitled to qualified immunity, he is entitled to summary judgment on the merits because Plaintiff has not established that Defendant Jackson was deliberately indifferent to or deliberately refused to treat Plaintiff's serious medical need, nor that Defendant Jackson's diagnosis, evaluation, and treatment of Plaintiff deviated from the recognized standard of acceptable professional practice. (Docket Entry No. 49, Mem. Supp. Mot. at 7.)

**Statement of Undisputed Facts**

Plaintiff was incarcerated at the Dickson County Jail in Dickson County, Tennessee, during March of 2010. (Docket Entry No. 1, Compl. at 1.) At that time, Defendant Jackson provided medical care for prisoners at the Dickson County Jail pursuant to an agreement with Dickson County. (Jackson Aff. ¶ 6.) Defendant Jackson also provided medical care to Plaintiff and other members of his family outside of prison, and to Plaintiff on various occasions from 2006 to 2010 when he was incarcerated at the Dickson County Jail. (Jackson Aff. ¶ 7.) Defendant Jackson prescribed medication for Plaintiff in 2009 and 2010 to control hypertension. (Jackson Aff. ¶ 8.)

In March 2010, Defendant Jackson became concerned with Plaintiff's high diastolic values reported by multiple blood pressure readings. (Jackson Aff. ¶ 8.) On March 18, 2010, Plaintiff's blood pressure was recorded as 180/126. (Jackson Aff. ¶ 8.) On March 25, 2010, Plaintiff's blood pressure was read twice and reported as 167/120 and 174/124. (Jackson Aff. ¶ 8.) Plaintiff also reported dizziness on March 25, 2010. (Jackson Aff. ¶ 8.) Defendant Jackson opined that "diastolic blood pressure values of 100 and above placed Mr. Grimes at increased risk for experiencing a stroke, cardiac muscle damage or other serious and potential life threatening consequences." (Jackson Aff. ¶ 9.) Defendant Jackson prescribed Triamterene-HCTZ, Lisinopril, and Atenolol to treat Plaintiff's hypertension on March 23, 2010. (Jackson Aff. ¶ 9.)

At some point between March 23 and March 24, 2010, Defendant Jackson was notified that Plaintiff refused his prescribed hypertension medications at 10:00 p.m. on March 23, 2010. (Jackson Aff. ¶ 10.) In the evening of March 29, 2010, Defendant Jackson's son, a registered nurse on duty at Dickson County Jail, contacted Defendant Jackson to inform him that Plaintiff's

blood pressure was recorded as 184/125, his heart rate was recorded as 94, and he reported having black-out spells and falling episodes. (Jackson Aff. ¶ 11.) Plaintiff was still refusing the hypertension medications prescribed by Defendant Jackson. (Jackson Aff. ¶ 11.) Defendant Jackson suggested that the Mobile Crisis Team from Centerstone in Clarksville, Tennessee, be contacted and involved in Plaintiff's care. (Jackson Aff. ¶ 11.) It appears from the record that the Mobile Crisis Team is a mental health evaluation liaison that is called in when individuals appear suicidal or pose a threat to themselves. (Docket Entry Nos. 60-1, 60-6.)

To prevent Plaintiff from harming himself before the Mobile Crisis Team arrived, several officers with the Dickson County Jail used force to put Plaintiff into a "green gown" after he refused to put on the gown himself. (Docket Entry No. 1, Compl. at 8.) It appears that the "green gown" is used with suicidal inmates instead of the traditional orange jumpsuits to prevent the inmate from using the jumpsuit to harm himself. (Docket Entry No. 60-1.) When the Mobile Crisis Team arrived, Plaintiff refused to speak with the counselor and was returned back to D-Pod. (Docket Entry No.1, Compl. at 8.) Plaintiff has not claimed any injuries as a result of the use of force to outfit him in the "green gown."

**Legal Discussion**

A. <u>Standard of Review</u>

A court "shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a) (2011). Facts are material if, as determined by substantive law, they "might affect the outcome of the suit." <u>Anderson v. Liberty Lobby, Inc.</u>, 477 U.S. 242, 248 (1986). A material factual dispute is genuine "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." <u>Id.</u> Furthermore, there is no genuine issue for trial "unless there is

sufficient evidence favoring the nonmoving party for a jury to return a verdict for that party." If such evidence is "merely colorable" or "is not significantly probative, summary judgment may be granted." Id. at 249-50; Adickes v. S.H. Kress & Co., 398 U.S. 144, 153 (1970); First Nat'l Bank of Arizona v. Cities Serv. Co., 391 U.S. 253, 290 (1968). A moving party is entitled to judgment as a matter of law "against a [nonmoving] party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." Celotex Corp. v. Catrett, 477 U.S. 317, 322-23 (1986). A nonmoving party "must do more than simply show that there is some metaphysical doubt as to the material facts," rather the nonmoving party must "set forth specific facts showing that there is a genuine issue for trial." Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 586-87 (1986).

B. Availability of Qualified Immunity Defense

Defendant Jackson contends that he is entitled to raise the affirmative defense of qualified immunity as a private contractor with Dickson County to provide medical care to inmates. (Docket Entry No. 49, Mem. Supp. Mot. at 4.) However, the Sixth Circuit has determined that "the history and purposes of qualified immunity [do] not reveal anything sufficiently special about the work of private prison medical providers that would warrant providing such providers with governmental immunity." Cook v. Martin, 148 Fed. Appx. 327, 342 (6th Cir. July 27, 2005). The Sixth Circuit has followed the lead of other Circuits that have consistently held that private medical providers may not assert the qualified immunity defense. Harrison v. Ash, 539 F.3d 510, 525 (6th Cir. 2008); Derfiny v. Pontiac Osteopathic Hosp., 106 Fed. Appx. 929, 938 (6th Cir. July 6, 2004); Maddle v. Corr. Med. Servs., Inc., 2008 WL 839715, at *5 (M.D. Tenn. Mar. 26, 2008); see also Jensen v. Lane County, 222 F.3d 570, 578

5

(9th Cir. 2000) (finding no qualified immunity defense available for private physicians providing services to county relating to civil commitments); Hinson v. Edmond, 192 F.3d 1342, 1345 (11th Cir. 1999), amended on other grounds, 205 F.3d 1264 (2000) (finding private physicians providing medical services to prison inmates had no right to assert qualified immunity defense). See generally Richardson v. McKnight, 521 U.S. 399 (1997).

In support of his proposition that he is entitled to raise the qualified immunity defense, Defendant Jackson cites the Sixth Circuit case, Williams v. Mehra, 186 F.3d 685 (6th Cir. 1999), which held that prison psychiatrists were entitled to raise the qualified immunity defense. However, the psychiatrists in Mehra were employed by the state-run prison, not private medical providers who contracted independently with the state-run prison. Defendant Jackson has not distinguished the instant case from Cook, Harrison, Jensen, and Hinson and has not shown why these decisions should not be followed. The reasoning of these decisions applies to facts raised in the instant action, and the undersigned Magistrate Judge finds that Defendant Jackson is not entitled to the defense of qualified immunity.

C. Medical Malpractice/Negligence Claim

To establish a medical malpractice claim under Tennessee law, a plaintiff must show "the recognized standard of acceptable professional practice," that "the defendant acted with less than or failed to act with ordinary and reasonable care in accordance with such standard," and that "[a]s a proximate result of the defendant's negligent act or omission, the plaintiff suffered injuries which would not otherwise have occurred." Tenn. Code Ann. § 29-26-115. The plaintiff must also produce expert testimony to establish negligence and proximate cause unless the malpractice is within the common knowledge of laypersons. Ayers v. Rutherford Hosp., Inc., 689 S.W.2d 155, 160 (Tenn. Ct. App. 1984). Thus, when faced with the physician's summary

judgment motion and supporting affidavit aligning the physician's actions with the standard of care, "[p]laintiffs who are unable to produce an expert affidavit of their own face almost certain dismissal of their complaint because the physician has effectively negated an essential element of their case." Kenyon v. Handal, 122 S.W.3d 743, 758 (Tenn. Ct. App. 2003).

In this case, Plaintiff has produced no evidence whatsoever to controvert the affidavit testimony of Dr. Jackson, so as to create a triable issue as to professional negligence by Defendant Jackson in his decision to recommend calling the Mobile Crisis Team to treat Plaintiff. Most notably, Plaintiff has not even alleged any injuries as a result of being forcibly dressed in the "green gown" nor produced evidence that Defendant Jackson's recommendation proximately caused the use of force against Plaintiff. Thus, the undersigned Magistrate Judge finds that Plaintiff has not produced sufficient evidence to present a jury question on the issue of medical malpractice and Defendant Jackson is entitled to summary judgment on the medical malpractice claim.

D. Deliberate Indifference Claim

Plaintiff's remaining claim against Defendant Jackson is for deliberate indifference in violation of Plaintiff's Eighth Amendment rights. The Eighth Amendment's proscription on cruel and unusual punishment also prohibits prison authorities from displaying deliberate indifference to the serious medical needs of prisoners as an "unnecessary and wanton infliction of pain." Estelle v. Gamble, 429 U.S. 97, 104 (1976). Specifically, deliberate indifference "is comprised of both an objective and a subjective component." Cardinal v. Metrish, 564 F.3d 794, 802 (6th Cir. 2009). To fulfill the objective component, a plaintiff must show that the medical deprivation or need is "sufficiently serious." Id. To fulfill the subjective component, a plaintiff must establish that "the official knows of and disregards an excessive risk to inmate health or safety; the official

must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." Id. (quoting Farmer v. Brennan, 511 U.S. 825, 837 (1994)).

Furthermore, deliberate indifference "entails something more than mere negligence;" rather, the prison official must "know of and disregard[] an excessive risk to inmate health or safety." Farmer, 511 U.S. at 835-37. Therefore, negligence or medical malpractice alone is insufficient to establish deliberate indifference. Perez v. Oakland County, 466 F.3d 416, 423 (6th Cir. 2006). When a physician negligently provides treatment to prison inmates, that physician "has not displayed a deliberate indifference to the prisoner's need, but merely a degree of incompetence which does not rise to the level of a constitutional violation." Comstock v. McCrary, 273 F.3d 693, 703 (6th Cir. 2001). As such, "federal courts are reluctant to 'second guess medical judgments and to constitutionalize claims' sounding in state tort law '[w]here a prisoner has received some medical attention and the dispute is over the adequacy of the treatment.'" Ruiz v. Martin, 72 Fed. Appx. 271, 276 (6th Cir. July 17, 2003) (quoting Westlake v. Lucas, 537 F.2d 857, 860 n.5 (6th Cir. 1976)).

In this case, the undersigned Magistrate Judge finds that Plaintiff has not produced sufficient evidence to present a jury question on the issue of professional negligence for purposes of the claim of medical malpractice. It follows, therefore, "that the same deficiencies preclude submission of this case to a jury on a claim of deliberate indifference." Stanley v. Wilson County, 2007 WL 2471693, at *6 (M.D. Tenn. Aug. 24, 2007); see also Simon v. Miami County Incarceration Facility, 2006 WL 1401645 (S.D. Ohio May 12, 2006). Thus, Defendant Jackson is entitled to summary judgment on Plaintiff's deliberate indifference claim against him.

8

In summary, Defendant Jackson is entitled to summary judgment on both the deliberate indifference and medical malpractice claims against him because Plaintiff has produced no evidence to establish that Defendant Jackson was even negligent, much less deliberately indifferent, in recommending treatment by the Mobile Crisis Team, that Plaintiff suffered any injuries as a result of the use of force against him, nor that the use of force against Plaintiff was proximately caused by Defendant Jackson's recommendation. In light of these shortcomings, as well as Plaintiff's failure to respond to Defendant Jackson's motion or the undersigned's show cause order, the case against Defendant Jackson is subject to dismissal.

## **RECOMMENDATION**

For the reasons stated above, the undersigned Magistrate Judge **RECOMMENDS** that Defendant Jackson's motion for summary judgment be **GRANTED**.

Under Rule 72(b) of the Federal Rules of Civil Procedure, any party has fourteen (14) days from service of this Report and Recommendation in which to file any written objections to this Recommendation, with the District Court. Any party opposing said objections shall have fourteen (14) days from receipt of any objections filed in this Report in which to file any responses to said objections. Failure to file specific objections within fourteen (14) days of receipt of this Report and Recommendation can constitute a waiver of further appeal of this Recommendation. Thomas v. Arn, 474 U.S. 140 (1985), reh'g denied, 474 U.S. 1111 (1986).

**ENTERED** this 22nd day of June, 2011.

    s/ John S. Bryant
JOHN S. BRYANT
United States Magistrate Judge